**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALEXANDER YERSHOV, individually and on behalf of all others similarly situated, | Case No. 1:14-cv-13112-FDS |
| Plaintiff, | Hon. F. Dennis Saylor IV |
| v. | REQUEST FOR ORAL ARGUMENT |
| GANNETT SATELLITE INFORMATION NETWORK, INC. d/b/a USA TODAY, a Delaware corporation, | |
| Defendant. | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>**

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ............................................................1

**BACKGROUND** ................................................................3

   A.  Gannett and the USA TODAY App...................................3

   B.  The Alleged Misconduct ..............................................3

   C.  Plaintiff's Claim ......................................................5

**ARGUMENT** ..................................................................6

   I.    Plaintiff Fails to State a Claim under the VPPA .......................6

       A. Legal Standard .................................................6

       B. The 64-digit Android ID is not PII under the VPPA ......................6

       C. Plaintiff's Reliance on Adobe's Statements Cannot Save
          His Claim.......................................................11

           1. Whether Adobe Can Reverse Engineer a Person's Identity
             Using Information from the App is Irrelevant .........................11

           2. The Court Should Disregard Plaintiff's Conclusory Adobe
             Allegations ..............................................13

   II.   Plaintiff is Not a Consumer Under the VPPA..........................16

   III.   Plaintiff Lacks Standing Because He Has Not Pleaded Injury in Fact ....17

**CONCLUSION**..................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Arnold v. United Parcel Serv., Inc.*,
　　136 F.3d 854 (1st Cir. 1998) ..........................................................................16

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009) ........................................................................ 6, 11, 15

*Bell Atl. Corp. v. Twombly*,
　　550 U.S. 544, 570 (2007) ..................................................................................6

*Conservation Law Found. of New England, Inc. v. Reilly*,
　　950 F.2d 38 (1st Cir. 1991) ............................................................................17

*David v. Alphin*,
　　704 F.3d 327 (4th Cir. 2013).........................................................................18

*Edwards v. First Am. Corp.*,
　　610 F.3d 514 (9th Cir. 2010)........................................................................20

*In re Hulu Privacy Litig.*,
　　No. C 11-03674, 2012 WL 3282960, (N.D. Cal. Aug. 10, 2012) ........... 17, 18

*In re Hulu Privacy Litig.*,
　　No. C 11-03674 LB, 2013 WL 6773794 (N.D. Cal. Dec. 20, 2013)...............18

*In re Hulu Privacy Litig.*,
　　No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)...... 1, 9, 12

*In re Nickelodeon Consumer Privacy Litig.*,
　　MDL 2443 SRC, 2014 WL 3012873 (D.N.J. Jul. 2, 2014)
　　..................................................................................1, 2, 7, 8, 11-12, 15-16

*Johnson v. Microsoft*,
　　No. C06-0900RAJ, 2009 WL 179440 (W.D. Wash. Jun. 23, 2009) ...............10

*Jorge v. Rumsfeld,*
    404 F.3d 556, 559 (1st Cir.2005) ...................................................................13

*Katz v. Pershing, LLC,*
    672 F.3d 64 (1st Cir. 2012) .............................................................................19

*Kendall v. Employees Ret. Plan of Avon Products,*
    561 F.3d 112 (2d Cir. 2009)....................................................................... 18-19

*Klimas v. Comcast Cable Comm'n, Inc.*,
    2003 U.S. Dist. LEXIS 27765 (E.D. Mich. Jul. 1, 2003)................................10

*Low v. LinkedIn Corp.*,
    900 F.Supp.2d 1010 (N.D. Cal. 2012) ....................................................... 12-13

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .......................................................................................17

*Mollett v. Netflix, Inc.,*
    No. 5:11-CV-01629-EJD, 2012 WL 3731542 (N.D. Cal. Aug. 17, 2012)......12

*Murray v. GMAC Mortgage Corp.*,
    434 F.3d 948 (7th Cir. 2006)..........................................................................20

*Pearson v. Bank of New York Mellon,*
    CIV.A. No. 14-12359-TSH, 2014 WL 3849969 (D. Mass. Aug. 4, 2014) .......6

*Pruitt v. Comcast Cable Holdings, LLC,*
    100 F. App'x 713 (10th Cir. 2004) .............................................................. 9-10

*Riccio v. Ford Motor Credit Co.,*
    238 F.R.D. 44 (D. Mass. 2006) .......................................................................13

*Spokeo, Inc. v. Thomas Robins*,
    No. 13-1339 (U.S. Sup. 2014).........................................................................20

*Sterk v. Best Buy Stores, L.P.,*
    No. 11 C 1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012) .........................18

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ......................................................................................17

*Viacom Int'l Inc. v. YouTube Inc.,*
    253 F.R.D. 256 (S.D.N.Y. 2008) .....................................................................9

*Warth v. Seldin,*
    422 U.S. 490 (1975) ......................................................................................17

*Watterson v. Page*
    987 F.2d 1 (1st Cir. 1993) ..............................................................................5

**Statutes and Regulations**

Cable Commcn's Privacy Act...................................................................9

Employee Retirement Income Security Act .........................................18

Massachusetts General Laws Chapter 93H ..........................................19

Video Protection Privacy Act ......................................................... *passim*

**Constitutional Provisions**

U.S. Const. Art III.................................................................... 2, 17-20

**Other**

MacMillan Online Dictionary, "Subscriber,"
    http://www.macmillandictionary.com/dictionary/american/subscribe ................17

Merriam–Webster Online Dictionary, "Subscriber,"
     http://www.merriam-webster.com/dictionary/subscriber ....................................17

S. Rep. No. 100-599 (1988) .......................................................................................7

## PRELIMINARY STATEMENT

Plaintiff alleges that Gannett violated the Video Privacy Protection Act ("VPPA") because when a user viewed a video clip on Gannett's USA TODAY "app," the app sent a third-party (Adobe) a record of the content viewed along with the 64-digit ID of the Android phone used to view that content. The insurmountable hurdle for Plaintiff, however, is that the VPPA prohibits only the disclosure of "information which **identifies a person** as having requested or obtained specific video materials." The VPPA does not seek to regulate the entire Internet by prohibiting disclosure of anonymous numbers or device identifiers like the 64-digit Android ID.

Indeed, no court has ever found that such an anonymous number alone constitutes "personally identifiable information" under the VPPA.[1] To the contrary, courts addressing the issue have concluded the exact opposite. Most recently, the court in *In re Nickelodeon Consumer Privacy Litig.*, MDL 2443 SRC, 2014 WL 3012873 (D.N.J. July 2, 2014) ("*Nickelodeon*") dismissed a claim that Viacom violated the VPPA by disclosing to Google information such as a user's anonymous username, IP address, and (like here) unique device identifier, each time a user watched video on certain Nickelodeon websites. In granting Viacom's motion to dismiss, the court explained that "there is simply nothing on the face of the statute or in its legislative history to indicate that 'personally identifiable information' includes the types of information . . . allegedly collected and disclosed by Viacom.'" The *Nickelodeon* court's holding followed the holdings of numerous other cases, including *In re Hulu Privacy Litig.,* No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ("*Hulu*") which likewise held that that to violate the VPPA, the "disclosed information must identify a specific person and tie that person to video content that the person watched," and that disclosure of a

---

[1] This case is the sixth case filed by the same counsel based on the theory that the disclosure of a device identifier violates the VPPA. The other cases are against Dow Jones, ESPN, CNN, Cartoon Network and Disney. Motions to dismiss are pending in each of those cases.

"unique identifier – without more" does not violate the VPPA.

Perhaps recognizing as much, the Complaint seeks to conjure a VPPA claim against Gannett by excerpting various public statements by Adobe to suggest that Adobe can combine the 64-digit Android ID with other unidentified information it may obtain from other unidentified sources to decipher an individual's actual identity even though Gannett (the allegedly disclosing party) does not itself know who the user is.  Even if this were true, it is irrelevant. The VPPA regulates disclosure of personally identifiable information, not the use or other activities of third parties that receive anonymous information. As the *Nickelodeon* court explained, it is not enough that "information might one day serve as the basis of personal identification after some effort on the part of the recipient" because "the same could be said for nearly any type of personal information; this Court reads the VPPA to require a more tangible, immediate link." And even if what Adobe subsequently does with the anonymous 64-digit Android ID is relevant, the statements Plaintiff cites either do not relate to, or actually contradict, his allegations and therefore must be disregarded.  Put simply, Plaintiff has not alleged facts that constitute a violation of the VPPA.

The Complaint fails for two additional, independent reasons.  First, Plaintiff is not a "consumer" under the VPPA.  In order to satisfy that definition, Plaintiff must be a "renter[], purchaser[], or subscriber[]" of video content.  Plaintiff alleges only that he is a "subscriber" but he does not fall under the common understanding of that term where all he did was download and use a free app, without registering or providing any information to Gannett.  Second, Plaintiff does not allege any actual injury, instead alleging only that he has had his "statutorily defined right to privacy violated."  This alleged violation is not enough to confer Article III standing.  Even if Plaintiff is permitted to amend his complaint, he will never be able to fix the

core flaw: the VPPA does not apply to information like the 64-digit Android ID allegedly provided to Adobe. Accordingly, the Court should dismiss the complaint without leave to amend.

### BACKGROUND

#### A.    Gannett and the USA TODAY App

Gannett Satellite Information Network, Inc. d/b/a USA TODAY is a Delaware corporation with its principal place of business in McLean, Virginia. Complaint ("Compl.") ¶ 6. It is a wholly-owned subsidiary of Gannett Co., Inc. (collectively, "Gannett"). *See* Gannett Satellite Information Network, Inc. d/b/a USA TODAY's Corporate Disclosure Statement [D.E. 9]. Gannett is a media company that produces and distributes to consumers a variety of content, including news content. Compl. ¶ 1. It distributes this content through several different mediums. For example, Gannett offers content through its print edition, USA TODAY, websites and mobile software applications, or apps. *Id.* One such app is the USA TODAY Android app (the "App") that can be downloaded to Android smartphone mobile devices. *Id.*

Android is a mobile device operating system developed by Google. *Id.* at n. 1. Smartphones, including devices made by HTC and Samsung, use the Android operating system. *Id.* To download the App to an Android smartphone, a user must go to Google's app store, called "Google Play." *See Id.* ¶ 10. Once downloaded, the App provides users with articles and video clips organized into various sections including News, Sports, and Life. *Id.* ¶ 12.

#### B.    The Alleged Misconduct

Plaintiff alleges that each time an Android user views a video clip on the App, the App discloses certain allegedly personally identifiable information ("PII") to an unrelated third party data analytics company, Adobe. *Id.* ¶¶ 2, 12. According to Plaintiff, the "combination of his

3

device's unique Android ID and the records of videos that he viewed" constitute PII because it "allows Adobe to identify users such as [plaintiff]." *Id.* ¶ 57. Plaintiff describes the Android ID as "a 64-bit number (as a hex string) that is randomly generated when a user first sets up the device and should remain constant for the lifetime of the user's device." *Id.* ¶ 12, n. 3.

Plaintiff does not claim that any alleged PII other than the user's 64-digit Android ID is provided to Adobe.[2] For example, Plaintiff does not allege that any Android user's name, mailing address, or email address is transmitted to Adobe. Nor does he allege that Gannett had such information about App users. Indeed, there is no allegation that users must register or provide any information to use the App. Nor does Plaintiff contend that the viewed content or Android ID is sent to anyone other than Adobe. Rather, Plaintiff's claim is based on the premise that users' viewing information is transmitted to Adobe along with their 64-digit Android ID.

According to Plaintiff, Adobe is a data analytics company that "provides insights into the behaviors and demographics for the App's user base." *Id.* ¶ 19. Plaintiff alleges that "to gain a broad understanding of a given consumer's behavior across all of the devices and applications that an individual uses," analytics companies such as Adobe "have to find ways to 'link' their digital personas." *Id.* ¶14. And that these companies' "primary solution has been to use unique identifiers to connect the dots." *Id.* Plaintiff does not allege, however, that Adobe (or anyone else) performed such "dot connecting" on him or any other user of the App. Nor does he allege that the App transmitted to Adobe any information that actually identified him (or any other real world person), such as a name, mailing address, or email address. He also does not allege that Gannett was or is aware of any purported efforts by Adobe to identify individuals in this manner.

---

[2] The Complaint makes several passing references to the Android phone's GPS coordinates also being transmitted to Adobe. *See e.g.*, Compl. ¶ 13. Plaintiff does not allege, however, that such GPS coordinates constitute PII or leads to the identification of a user. Nor could he given that under the VPPA, PII is only information that "identifies a person as having requested or obtained specific video materials." 18 U.S.C. § 2710(a)(3).

Instead, Plaintiff distorts a series of statements from Adobe in an effort to create the specter of such identification.  For example, Plaintiff points to statements from Adobe "senior employees" and "marketing materials" allegedly revealing "the vast array of information that feeds into a customer's digital profile in Adobe's databases using information transmitted from sources like the [App]."  Id. ¶¶ 25-30.  None of the statements Plaintiff points to reference Gannett or the USA TODAY App.  Moreover, many are taken out of context and pleaded in a misleading way. And they do not support the notion that Adobe can identify users of the App by their device ID.  Moreover, Plaintiff ignores statements in the same "marketing materials" that flatly contradict his allegations, such as the statement quoted in paragraph 28 of the Complaint where Adobe discusses how to link users across devices where they "don't know who they are." Id. ¶ 28.  Plaintiff also ignores statements in Adobe's privacy policy for its analytics service that "Adobe does not use the information we collect for a company except as may be allowed in a contract with that company," which "is usually limited to providing our services to the company," and even where Adobe may share information between companies, it "is anonymous and does not identify individuals."[3]

### C.    Plaintiff's Claim

Plaintiff alleges only a violation of the Video Privacy Protection Act, 18 U.S.C. § 2710. Plaintiff seeks to bring this action as a class action on behalf of himself and "[a]ll persons in the United States [that] used the [App] to watch videos and had their PII transmitted to Adobe." Compl. ¶ 43. Plaintiff identifies no actual injury or damage that he or other potential class

---

[3] See Declaration of Jacob Sommer in Support of Gannett's Motion to Dismiss Complaint ("Sommer Decl.") Ex. 1, at 2.  The exhibits attached to the declaration may be considered by this Court in evaluating Gannett's Motion to Dismiss.  See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (explaining that courts can consider at motion to dismiss stage: documents the authenticity of which are not disputed by the parties; official public records; documents central to plaintiffs' claim; and documents sufficiently referred to in the complaint).

members suffered.   Rather, he alleges only that he "and the Class have had their statutorily defined right to privacy violated."   *Id.*   ¶ 62

## ARGUMENT

### I.      Plaintiff Fails to State a Claim under the VPPA

#### A.      Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Facial plausibility requires factual allegations sufficient to "draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   Barebones, conclusory allegations are insufficient to meet *Iqbal's* plausibility standard.   *Pearson v. Bank of New York Mellon*, CIV. A. No. 14-12359-TSH, 2014 WL 3849969 at *5 (D. Mass. Aug. 4, 2014).   Labels, conclusions and "formulaic recitation[s]" will likewise not suffice.   *Twombly*, 550 U.S. at 555.   Where the alleged facts "do not permit the court to infer more than the mere possibility of misconduct," the complaint has alleged—but it has not shown—that the pleader is entitled to relief.   *Iqbal*, 556 U.S. at 679

#### B.      The 64-digit Android ID is not PII under the VPPA

Both the history of the VPPA as well as recent case law confirm that a 64-digit random number associated with an electronic device—rather than a person—is outside the VPPA's scope.   Plaintiff nonetheless tries to contort the VPPA into a broad reaching, albeit long dormant, statute regulating the entire Internet by claiming that an Android ID is information that can be a link in a chain that can ultimately lead to the identity of a particular person.   But in the over 25 years since the VPPA's enactment no court has accepted the contention that a number that

identifies a device (e.g., a computer, tablet, modem, set-top-box or phone) constitutes PII. This Court should not do so now.

Congress passed the VPPA in 1988 during the era of video stores and VHS tapes, after a Washington D.C. newspaper published a profile of Judge Robert Bork "based on the titles of 146 films his family had rented from a video store." S. Rep. No. 100-599, at 5, *reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-5 ("Senate Report"). Congress was focused on remedying this perceived wrong: the disclosure of video viewing habits of real-world individuals, not regulating the use of analytics to provide statistics regarding unique website visitors. The VPPA's text clearly addresses the goal of the statute by making a "video tape service provider" liable only where it "knowingly disclos[es]" to any person "personally identifiable information concerning any consumer." 18 U.S.C. § 2710(b).[4] Not surprisingly, the VPPA does not refer to devices, but to people, by defining "personally identifiable information" as "information ***which identifies a person*** as having requested or obtained specific video materials." *Id.* § 2710(a)(3) (emphasis added). The clear statutory text is reinforced in the Senate Report's section-by-section analysis of the statute which states that PII is information "that identifies a ***particular person*** as having engaged in a ***specific transaction*** with a video tape service provider." Senate Report at 4342-12 (emphasis added). And that the statute "does not restrict the disclosure of information other than personally identifiable information." *Id.*

Courts have reached the same conclusion. Most recently, in *Nickelodeon*, the Northern District of New Jersey dismissed a VPPA claim against Viacom based on its operation of certain

---

[4] Plaintiff's VPPA claim will ultimately fail for the additional, independent, reason that Gannett is not a "video tape service provider" under the VPPA in that it does not distribute "prerecorded video cassette tapes or similar audio visual materials." *See* 18 U.S.C. § 2710(a)(4). For purposes of this motion only, however, Gannett is not challenging the sufficiency of Plaintiff's pleading with respect to prerecorded materials viewed on the App. Gannett reserves the right to contest this issue, as well as other factual allegations taken as true solely for purposes of this motion, at summary judgment based on facts adduced in discovery.

Nickelodeon websites.  As here, plaintiffs alleged that Viacom violated the VPPA because each time a plaintiff watched a video on one of the websites, Viacom disclosed to its analytics provider, Google, the plaintiff's "anonymous username; IP address; browser setting; 'unique device identifier'; operating system; screen resolution; [and] browser version," with the title of the video watched.  *In re Nickelodeon*, 2014 WL 3012873 at *1.  Viacom sought dismissal arguing that the information disclosed was not PII under the VPPA.

The court agreed, holding that "there is simply nothing on the face of the statute or in its legislative history to indicate that 'personally identifiable information' includes the types of information – anonymous user IDs, a child's gender and age, and information about the computer used to access Viacom's websites – allegedly collected and disclosed by Viacom." *Id.* at *9.  The court gave the phrase "information which identifies a person" its plain meaning, explaining "that PII is information which must, without more, itself link an actual person to actual video materials." *Id.*  Because none of the information Viacom allegedly disclosed "either individually or aggregated together, could, without more, serve to identify an actual, identifiable Plaintiff and what video or videos that Plaintiff watched," the court concluded that plaintiffs' VPPA claim could not survive.  *Id.* at *10.

In reaching its decision, the court distinguished between information that identifies a device and that which identifies a person. The court noted, for example, that much of the information allegedly disclosed by Viacom "is not even anonymized information about the Plaintiff himself; it is anonymized information about a computer used to access a Viacom site." *Id.*  And that "[k]nowing anonymized information about a computer, and an IP address associated with that computer, will not link actual people (children or adults) to their specific video choices, any more than knowing that an Opinion was written on an HP Compaq running

Windows XP located at a Philadelphia IP address will link an actual judge to a specific case." *Id.* at \*11.  The Android ID is no different in that it is anonymized information about a mobile device, not information about a "particular person."

Earlier this year, the Northern District of California found that Hulu did not violate the VPPA by disclosing certain "unique numeric identifications tied to video watching" to analytics company comScore.  *See Hulu,* 2014 WL 1724344 at \*7.  In doing so, the *Hulu* court explained that to violate the VPPA, the "disclosed information must identify a specific person and tie that person to video content that the person watched."  *Id.* at \*6.  And that a "unique identifier - without more" (like what Hulu disclosed to comScore) does not violate the VPPA, even if that number "hypothetically could have been linked to video watching."  *Id.* at \*12, \*1.

*Nickelodeon and Hulu* are only the most recent cases concluding that unique anonymous identifiers without more are not PII, and that "person" means person, not device.  For example, in *Viacom Int'l Inc. v. YouTube Inc.,* 253 F.R.D. 256 (S.D.N.Y. 2008), YouTube refused to disclose user login IDs to Viacom in response to a discovery request, citing the VPPA.  The court rejected YouTube's argument, holding that "login ID is an anonymous pseudonym that users create for themselves when they sign up with YouTube which without more cannot identify specific individuals."  *Id.* at 262 (internal quotations and citations omitted).

Courts have also reached the same conclusion under similar privacy statutes like the Cable Act, which limits the ability of a cable provider to "collect personally identifiable information concerning any subscriber."  47 U.S.C. § 551(b)(1).  In *Pruitt v. Comcast Cable Holdings*, 100 F. App'x 713 (10th Cir. 2004), cable subscribers alleged that Comcast violated the Cable Act by maintaining "an identifying number known as a 'unit address' [that] allow[ed] Comcast to match the subscriber's purchase to its billing system."  *Id.* at 714.  As the Tenth

Circuit explained, the "heart of the dispute [was] whether the information stored within Comcast's converter boxes is personally identifiable information." *Id.* at 716. The Tenth Circuit affirmed the district court's ruling that it was not PII, explaining that without information from Comcast's billing or management system "one cannot connect the unit address with a specific customer; without the billing information even Comcast would be unable to identify which individual household was associated with the raw data in the converter box." *Id.*[5]

Similarly, in *Klimas v. Comcast Cable Communications, Inc.*, 2003 U.S. Dist. LEXIS 27765 (E.D. Mich. July 1, 2003), *aff'd on other grounds*, 465 F.3d 271 (6th Cir. 2006), Comcast moved to dismiss plaintiff's claim that it violated the Cable Act by collecting users' IP addresses. The "dispositive issue in regard to Comcast's Motion [was] whether an IP address is PII under the Cable Act." *Id.* at *8. The court held that it was not, finding that "an IP address, by itself, is not 'specific information about the subscriber.'" *Id.* at *10.[6]

Courts analyzing whether anonymized numbers like the 64-digit Android ID are PII in other contexts have reached the same conclusion. In *Johnson v. Microsoft*, No. C06-0900RAJ, 2009 WL 1794400 at *4 (W.D. Wash. June 23, 2009), the court found that Microsoft's collection of user IP addresses did not violate a software licensing agreement that prohibited Microsoft from collecting users' "personally identifiable information" without consent. The court explained that "[i]n order for 'personally identifiable information' to be personally identifiable, it must identify a person. But an IP address identifies a computer, and can do that only after matching the IP address to a list of a particular Internet service provider's subscribers." *Id.* Like the IP address in *Johnson*, at most, the Android ID identifies a device, not a person. Put simply,

---

[5] In *Pruitt*, Comcast had the theoretical ability to link the unit address to the subscriber's name by consulting its billing system. Nevertheless, standing alone, the unit address stored in the cable boxes were deemed not to be PII. This case makes clear that device identifiers are not PII even where such linkage is theoretically possible.

[6] In affirming the district court's decision on other grounds, the Sixth Circuit nevertheless confirmed the district court's conclusion that the IP Address without more did not identify a person. *See Klimas*, 465 F.3d at 280, n. 2.

there is no precedent under the VPPA for treating a number like the 64-digit Android ID as PII.

### C.    Plaintiff's Reliance on Adobe's Statements Cannot Save His Claim

Perhaps recognizing that the information allegedly disclosed by the App is not PII, Plaintiff dedicates the majority of his Complaint to excerpting statements from Adobe to suggest that Adobe could (or even does) use the Android ID along with other unidentified information that Adobe may collect from other sources, to identify a person.  *See* Compl. ¶¶ 14-29.  Even if this were the case, it is irrelevant to the question of whether disclosures by Gannett constitute PII.  Moreover, Plaintiff's allegations regarding Adobe are exactly the type of speculative and conclusory allegations that courts must disregard.  *See Iqbal*, 556 U.S. at 679 ("Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'-'that the pleader is entitled to relief.'").

### 1.    Whether Adobe Can Reverse Engineer a Person's Identity Using Information from the App is Irrelevant

The VPPA regulates disclosure of personally identifiable information, not the activities of third parties that receive device information.  But Plaintiff does not allege that Gannett disclosed any information that actually identified him (or any other real world person), such as a name, mailing address, or email address.  Nor does he allege that Gannett had such information.  Instead, he bases his claim on the theory that Adobe, using the 64-digit Android ID, "was able to identify [Plaintiff] and attribute his video viewing records to an individualized profile of [Plaintiff] in its databases."  Compl. ¶ 42.  But even if Plaintiff offered sufficient support for this conclusory allegation (which he does not), the use of information by a third party—not done at Gannett's direction or under its control—cannot subject Gannett to liability or transform the 64-digit number Gannett allegedly provided into PII sufficient to create VPPA liability for Gannett.

Indeed, the *Nickelodeon* court rejected just such an argument in dismissing plaintiff's

VPPA claim. Specifically, the *Nickelodeon* court explained that "[c]ertainly, this type of information might one day serve as the basis of personal identification after some effort on the part of the recipient, but the same could be said for nearly any type of personal information; this Court reads the VPPA to require a more tangible, immediate link." *Id*. at 22. The court found this conclusion buttressed by the VPPA's legislative history which lacked "any indication that PII can be anonymous information which may after investigation lead to the identification of a specific person's video habits." *Id*. at 20.

Likewise, the Court in *Hulu* rejected plaintiffs' VPPA claim notwithstanding the allegation that comScore "could easily" identify users by entering the unique seven-digit Hulu IDs comScore allegedly received from Hulu into a web browser to access the users' Hulu profile page with their username. *Hulu* at 4, 13. The *Hulu* court recognized that because the VPPA governs disclosure, not use, to violate the VPPA the disclosed information "must identify a specific person and tie that person to video content that the person watched." *Id*. at *9. As such, the disclosure of a "unique identifier – without more" did not violate the VPPA, even if that number "hypothetically could have been linked to video watching." *Id*. at *12, *1. *See, also.*, *Mollet v. Netflix Inc.*, Case No. 5:11-CV-01629-EJD, 2012 WL 3731542, *4 (N.D. Cal. August 17, 2012) (dismissing VPPA claim and explaining that "fact that Congress outlawed disclosure to persons other than the consumer does not mean that Congress intended to prevent every conceivable manner in which a third-party might gain access to a consumer's PII).

Courts have also rejected this re-identification argument in analogous contexts. In *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012), plaintiffs brought numerous claims against LinkedIn based on LinkedIn's alleged sharing of users' unique LinkedIn identification number with third parties, such as web tracking companies. Plaintiffs alleged that "third parties

12

[could] theoretically de-anonymize a user's LinkedIn ID number" by "associate[ing] a LinkedIn user ID and URL of the user's profile page with a user's cookies ID and thus determine a LinkedIn user's identity." *Id.* at 1017.  The court dismissed plaintiffs' invasion of privacy claim, explaining that "[a]lthough plaintiffs postulate that these third parties could, through inferences, de-anonymize this data, it is not clear that anyone has actually done so, or what information precisely, these third parties have obtained." *Id.* at 1025.

## 2. The Court Should Disregard Plaintiff's Conclusory Adobe Allegations

Plaintiff's conclusory allegations about Adobe's use of information are not only irrelevant to Gannett's liability under the VPPA, but also unsupported and contradicted by Plaintiff's own purported "evidence."  In evaluating a motion to dismiss, courts need not accept as true "facts" that "have been conclusively contradicted by plaintiffs' concessions or otherwise," and shall "likewise eschew any reliance on bald assertions, [or] unsupportable conclusions." *Riccio v. Ford Motor Credit Co.*, 238 F.R.D. 44, 46 (D. Mass. 2006).  *See also Jorge v. Rumsfeld*, 404 F.3d 556, 559 (1st Cir. 2005) (noting that courts may properly consider on a motion to dismiss not only the complaint, but also the "facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice."). Accordingly, the Court should disregard Plaintiff's "evidence" of Adobe's supposed reverse engineering of identities.

For example, Plaintiff cites to an interview with Christopher Comstock, a senior project manager at Adobe, as purported support for the allegation that Adobe collects information like the 64-digit Android ID and feeds it into a "person's profile" in order to identify them.  Compl. ¶¶ 22-23.  But nowhere does Mr. Comstock state that Adobe does (or even can) use a 64-digit Android ID like the one transmitted from the App to identify a specific person.  To the contrary,

Mr. Comstock's statements make clear that Adobe does not create "profiles" of individuals by using Android IDs and video selections, like those allegedly provided by the App.   Mr. Comstock refers to this task of "figuring out who may be the user across numerous devices" as "probabilistic matching." Sommer Decl. Ex. 2, at 2.  But he goes on to say that Adobe ***does not*** offer probabilistic matching technology.  *Id.*  Mr. Comstock does say that if a customer already is using a probabilistic matching technology offered by other companies, Adobe allows the customer to continue using it ("We sit in an agnostic point of view in that we provide the tools that let customers choose what to do with their data").  *See Id*. Thus, the actual quote is contrary to the implication Plaintiff draws in the Complaint.

Likewise, Plaintiff cites to an image from "Adobe's marketing materials" depicting a pyramid describing the types, characteristics, and sources of customer data.  Compl. Figure 3. According to Plaintiff, this pyramid "portrays the vast array of information that feeds into a consumer's digital profile in Adobe's databases using information transmitted from sources like the USA TODAY App."  *Id.* ¶ 26.  But the image is taken from a white paper for a marketing service offered by Adobe, called Adobe Campaign, that Plaintiff does not even allege Gannett uses.   Moreover, Plaintiff's description of the pyramid as portraying information that "feeds into" Adobe's databases from third parties is just wrong.  The pyramid is referencing information that Adobe's customers may already possess themselves, which Adobe Campaign helps them organize and leverage. Sommer Decl. Ex. 3, at 2.  As the white paper explains, Adobe Campaign helps companies "access data that already exists internally" by "integrating disparate data sources within the Adobe Campaign platform."  *Id* at 1, 2.  Put another way, the image and white paper Plaintiff cites do not relate to data Adobe itself collects, let alone stand for the proposition that Adobe combines information such as the 64-digit Android ID with information from other

sources to create "user profiles" or "identify" individuals such as Plaintiff.

Finally, Plaintiff cites to Adobe's privacy policy as further "evidence" that Adobe combines information from different sources to personally identify users. Again, that document contradicts Plaintiff's theory. The excerpt Plaintiff cites states that companies using Adobe "may send us [Adobe] information that allows **them** [i.e., the company, not Adobe] to identify you," Compl. ¶ 25—not that Adobe uses the information received from companies to identify anyone. To the contrary, the privacy policy goes on to say that "Adobe does not use the information we collect for a company except as may be allowed in a contract with that company," which "is usually limited to providing our services to the company," and even in those instances where Adobe may share information between companies, it is "'aggregated' information" that "is anonymous and does not identify individuals." Sommer Decl. Ex. 1, at 2. [7]

This Court can and should disregard the Complaint's allegations that Adobe combines the 64-digit Android ID it allegedly receives from the App with information it collects from other sources to personally identify Plaintiff or other individuals. Stripping away the "facts" that Plaintiff's own documents contradict, none of the allegations in the Complaint rise above "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [that] will not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Nickelodeon*, 2014 WL 3012873, at *2 n.3 (refusing to consider plaintiffs' allegation that Viacom and Google "were able to identify specific individuals" by connecting "online

---

[7] The Complaint also distorts excerpts from Google's guide intended for developers of Android apps. Specifically, the Complaint cites that guide for the purported proposition that "when a device has multiple users [] each user appears as a completely separate device, so the ANDROID ID value is unique to each user." *Id.* ¶ 17. What Plaintiff fails to mention, however, is that the referenced page expressly states that "the user must explicitly modify [this preference]"—*i.e.*, the user must change the settings for his or her device to enable this multi-user functionality as opposed to it being a default setting. And that the same guide informs app developers that "if your app requests one of the hardware device identifiers (such as the . . . ANDROID_ID) they will provide the same value for each user because these identifiers are tied to the hardware and not the user." *See* Sommer Decl. Ex. 4 at 5.

activity and information" with "offline activity and information," because it was "entirely conclusory" and supported by "no facts . . . which indicate when or how either Defendant linked the online information it collected with extra-digital information about the Plaintiffs.").[8]

## II.     Plaintiff is Not a Consumer Under the VPPA

Even if Plaintiff had adequately alleged a disclosure of PII as required by the VPPA, his claim should be dismissed because he is not a "consumer" under the VPPA.  The VPPA defines a "consumer" as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).  Plaintiff does not allege that he rented or purchased from Gannett.  Rather, he calls himself a "subscriber" of Gannett because he "downloaded, installed and watched videos" using the App.  Compl. ¶ 53.  Because the VPPA does not define "subscriber," the Court should "construe it in accordance with its ordinary or natural meaning." *Arnold v. United Parcel Serv., Inc.*, 136 F.3d 854, 859 (1st Cir. 1998)

Plaintiff is not a "subscriber" of Gannett or the App (and therefore not a "consumer" under the VPPA) under the ordinary or natural meaning of that term.  He did not register or otherwise sign-up with Gannett.  Nor does he allege that he was required to, or did, provide any personal information such as a name, email address or mailing address to Gannett in order to use the App or watch videos.  Indeed, nowhere in the Complaint does Plaintiff allege that Gannett even knows his identity.  In short, he has no persistent relationship with Gannett.  He paid nothing, can decide never to use the App, and can delete it from his phone at any time—without any repercussion, cost or continuing obligation.  There is no precedent for the proposition that

---

[8] The Complaint should also be dismissed for the additional, independent, reason that even assuming the 64-digit Android ID were PII (which it is not) because Adobe could use it to reverse engineer the identity of an actual person, Plaintiff has failed to adequately allege that Gannett "knowingly" disclosed such PII to Gannett.  Indeed, Plaintiff's lone allegation on this issue is the conclusory statement, unsupported by any facts, that the App's "transmission of Plaintiff's PII to Adobe constitute 'knowing[] disclosures' of PII. Compl. ¶ 17.  And even to the extent Plaintiff purports to rely on his allegations related to Adobe's alleged public statements as providing "constructive notice" of Adobe's practices sufficient to impart "knowledge" on Gannett, as noted above, those allegations simply do not stand for the propositions Plaintiff suggests and must be disregarded.

downloading and using a free app converts someone into a "subscriber" under the VPPA.[9]  This case differs from *Hulu* in which the court found that plaintiffs were "subscribers" where they "signed up for a Hulu account, became registered users, received a Hulu ID, established Hulu profiles, and used Hulu's video streaming services."  *In re Hulu Privacy Litig.*, No. C 11-03674, 2012 WL 3282960, *7 (N.D. Cal. Aug. 10, 2012).  Plaintiff here allegedly viewed videos, but this is the only characteristic he has in common with the *Hulu* plaintiffs.

### III.     Plaintiff Lacks Standing Because He Has Not Pleaded Injury in Fact

Further, the Complaint should be dismissed because Plaintiff has not alleged actual, concrete, injury and thus lacks standing under Article III of the U.S. Constitution.  Article III standing requires

> (1) an injury in fact, which is an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  To satisfy the injury-in-fact prong of Article III standing, a plaintiff must allege that as a result of the defendant's actions he has suffered 'a distinct and palpable injury.'"  *Conservation Law Foundation of New England, Inc. v. Reilly*, 950 F.2d 38, 40 (1st Cir. 1991) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  This requirement "is a hard floor . . . that cannot be removed by statute."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).  *See also Conservation Law Foundation*, 950 F.2d at 41 ("Congress may not expand by statute the standing limitations imposed by Article III.").

Plaintiff does not identify any actual injury or damage (economic or otherwise) that he or

---

[9]  Dictionary definitions confirm the ordinary and natural meaning of "subscriber."  *See* MacMillan Online Dictionary ("someone who pays money in order to receive something regularly, for example copies of a newspaper or magazine, or a service"), available at http://www.macmillandictionary.com/dictionary/american/subscribe (last visited Sept. 18, 2014); Merriam–Webster Online Dictionary ("to pay money to get a publication or service regularly"), available at http://www.merriam-webster.com/dictionary/subscriber (last visited Sept. 18, 2014).

other potential class members suffered.  Rather, he alleges only that he and the Class "have had their statutorily defined right to privacy violated."  Compl.  ¶ 62.  But the VPPA should not be interpreted to support standing based on a mere statutory violation without concrete particularized harm.  Other courts have reached this conclusion.  In *Sterk v. Best Buy Stores, L.P.*, No. 11-C-1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012), plaintiff sued Best Buy claiming that it violated the VPPA by impermissibly sharing and retaining records of plaintiff's movie purchases.  *Id*. at *1-2.  After Best Buy moved to dismiss, the court held that plaintiff failed to allege injury-in-fact as required under Article III.  *Id*. at *8.  The court expressly rejected plaintiff's argument that "a claim of violation of a statutory right under the VPPA alone is sufficient injury-in-fact to confer Article III standing."  *Id*. at *5.  Specifically, the court explained that "a plaintiff must plead an injury beyond a statutory violation to meet the standing requirement of Article III" and that a statute "cannot abrogate the basic standing requirement that an individual suffer an actual redressable injury-in-fact."  *Id*. (internal citations omitted).[10]

The *Best Buy* decision is consistent with, not only Supreme Court precedent, but also other circuit courts. For example, the Fourth Circuit has rejected the argument that the "deprivation of [a] statutory right is sufficient to constitute an injury-in-fact for Article III standing" because such "theory of Article III standing is a non-starter as it conflates statutory standing with constitutional standing."  *David v. Alphin*, 704 F.3d 327, 338-39 (4th Cir. 2013). The Second Circuit has likewise rejected the argument that "either an alleged breach of fiduciary duty to comply with ERISA, or a deprivation of [the plaintiff's] entitlement to that fiduciary

---

[10] The *Hulu* court took a more expansive view of actual injury.  *See In re Hulu Privacy Litig.,* No. C 11-03674 LB, 2013 WL 6773794, *8 (N.D. Cal. Dec. 20, 2013).  In Hulu, however, unlike here, the plaintiffs alleged that Hulu transmitted to third parties "information that identified Plaintiffs and Class Members personally" including Facebook IDs and Hulu IDs, which linked directly to their Hulu profile pages that included the users' names and locations, thus injuring them.  *See In re Hulu Privacy Litig*., No. C 11-03674, 2012 WL 3282960, *2 (N.D. Cal. Aug. 10, 2012).  There are no such allegations in this case where Plaintiff only contends that Gannett disclosed an anonymized device number.

duty, in and of themselves constitutes an injury-in-fact sufficient for constitutional standing."
*Kendall v. Employees Ret. Plan of Avon Products,* 561 F.3d 112, 121 (2d Cir. 2009).

The First Circuit has found Article III standing lacking in situations similar to the one at hand.  In *Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012), a brokerage account holder brought a putative class action against her broker alleging violations of several Massachusetts consumer protection statutes, based on the broker's alleged failure to protect her sensitive non-public information.  *Id.* at 69.  After the district court granted the broker's motion to dismiss on the grounds that plaintiff lacked Article III standing, plaintiff  appealed.  *Id.* at 70. Plaintiff argued she had standing because she was "assert[ing] injuries to rights purportedly created by Chapter 93 [of the Massachusetts Code] and other kindred privacy regulations."  *Id.* at 78.  The First Circuit affirmed the district court's ruling that plaintiff lacked standing, stating that "an allegation that someone has failed to meet some legal requirement, without more, is insufficient to confer Article III standing."  *Id.* at 78.  Instead, "an injury in fact must also be alleged."  *Id.* Evaluating the plaintiff's complaint "through this prism," the court found standing lacking because "the complaint does not contain an allegation that the plaintiff's nonpublic personal information has actually been accessed by any unauthorized user."  *Id.*

The same reasoning applies here.  Stripped of conclusory allegations, Plaintiff does not allege that Adobe in fact used the 64-digit Android ID it received from the App to actually identify him (or anyone else).  Accordingly, "[g]iven the multiple strands of speculation and surmise from which the [P]laintiff's hypothesis is woven, finding standing in this case would stretch the injury requirement past its breaking point."  *Id.* at 80.

Notwithstanding this well-settled principle, certain other circuits have disregarded the injury-in-fact requirement and held that a statutory violation can create Article III standing.  *See*

*e.g. Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952–53 (7th Cir. 2006); *Edwards v. First Am. Corp.,* 610 F.3d 514, 517 (9th Cir. 2010).   A writ of certiorari is currently before the Supreme Court asking it to decide the propriety of those departures from traditional Article III standing requirements.[11]   Unless and until the Supreme Court affirms such departures, however, this Court can and should also dismiss the Complaint because Plaintiff lacks standing.

## CONCLUSION

For the foregoing reasons, this Court should grant Gannett's Motion to Dismiss the Complaint with prejudice.

Dated:  September 19, 2014

By: /s/ Jacob Sommer
Marc Zwillinger (admitted *pro hac vice*)
Jacob Sommer (admitted *pro hac vice*)
Jeffrey Landis (admitted *pro hac vice*)
ZWILLGEN PLLC
1900 M. St. N.W., Ste. 250
Washington, DC 20036
Tel: 202.296-3585
Fax: 202.706.5298

Allison D. Burroughs
aburroughs@nutter.com
NUTTER MCCLENNEN & FISH
Seaport West
155 Seaport Boulevard
Boston, Massachusetts  02210
Tel: 617.439.2684
Fax:  617.310.9684

*Counsel for Defendant*

---

[11] *See* Petition for Writ of Certiorari, *Spokeo, Inc. v. Robins*, No. 13-1339, (U.S. May 1 2014), *available at* http://sblog.s3.amazonaws.com/wp-content/uploads/2014/05/13-1339-Spokeo-v-Robins-Cert-Petition-for-filing.pdf.