**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALEXANDER YERSHOV, individually and on behalf of all others similarly situated, | Case No. 1:14-cv-13112-FDS |
| Plaintiff, | Hon. F. Dennis Saylor IV |
| v. | |
| GANNETT SATELLITE INFORMATION NETWORK, INC. d/b/a USA TODAY, a Delaware corporation, | |
| Defendant. | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**MOTION TO DISMISS CLASS ACTION COMPLAINT**</u>

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT.........................................................................................1

BACKGROUND ..............................................................................................................2

A.   The App, the Alleged Misconduct, and Plaintiff's Claim .................................2

B.   The Court's Initial Dismissal and the First Circuit's Decision on Appeal ........4

C.   The Supreme Court's *Spokeo* Decision ...........................................................4

ARGUMENT ....................................................................................................................5

I.   Yershov Cannot Rely on the Alleged VPPA Violation as his Injury-in-fact ....................6

    A.   *Spokeo* Requires Concrete Injury Even in the Context of a Statutory
        Violation .............................................................................................................6

    B.   The Alleged Disclosures Here Would Not Have Traditionally Provided
        the Basis for a Lawsuit.......................................................................................12

II.   The Complaint Does Not Allege Any Material Risk of Harm to Plaintiff ......................14

III.   Yershov Has Not Plausibly Alleged that Adobe Has a Profile on Him............................16

CONCLUSION..................................................................................................................18

i

# TABLE OF AUTHORITIES

## Cases

*Bell Atlantic Corp. v. Twombly*,
      550 U.S. 544 (2007).................................................................................................... 16, 18

*Boelter v. Hearst Communications, Inc.*,
      No. 15 Civ. 3934, 2016 WL 3369541 (S.D.N.Y. June 17, 2016).............................. 9

*Booth v. Appstack, Inc.*,
      No. 13-1533 JLR, 2016 WL 3030256 (W.D. Wash. May 24, 2016)......................... 9

*Chambliss v. Carefirst, Inc.*,
      No. RDB-15-2288, 2016 WL 3055299 (D. Md. May 27, 2016) ....................... 15, 16

*Clapper v. Amnesty International USA*
      133 S. Ct. 1138 (2013)...................................................................................... 6, 15, 16

*Conservation Law Foundation of New England, Inc. v. Reilly*,
      950 F.2d 38 (1st Cir. 1991)........................................................................................ 6

*Conservation Law Foundation v. Public Service Company of New Hampshire*,
      No. 11-CV-353-JL, 2012 WL 4477669 (D.N.H. Sept. 27, 2012) .......................... 18

*Dopp v. Fairfax Consultants, Ltd.*,
      771 F. Supp. 494 (D.P.R. 1990).............................................................................. 13

*Dubois v. U.S. Dept. of Agriculture*,
      102 F.3d 1273 (1st Cir. 1996)................................................................................... 5

*Eichenberger v. ESPN, Inc.*,
      C14-463, 2:14-cv-463 (W.D. Wash. Nov. 24, 2014)............................................. 17

*Federal Election Commission v. Akins*,
      524 U.S. 11 (1998)............................................................................................. 11, 12

*Figueroa v. Mendez*,
      No. CIV. 07-1289 (RLA), 2008 WL 898095 (D.P.R. Mar. 28, 2008) .................... 17

*FW/PBS, Inc. v. City of Dallas*,
      493 U.S. 215 (1990)............................................................................................ 17, 18

*Gubala v. Time Warner Cable Inc.*,
      No. 15-CV-1078, 2016 WL 3390415 (E.D. Wis. June 17, 2016) .......................... 8, 11, 14, 15

*Hochendoner v. Genzyme Corp.*,
   15-1446, 2016 WL 2962148 (1st Cir. May 23, 2016) ............................................. 7

*In re Barclays Bank PLC Securities Litigation*,
   No. 09 Civ. 1989, 2016 WL 3235290 (S.D.N.Y. June 9, 2016)................................. 9

*In re Nickelodeon Consumer Privacy Litigation*,
   MDL No. 2443, CIV.A. 12-07829, 2014 WL 3012873 (D.N.J. July 2, 2014)........................ 17

*In re Nickelodeon Consumer Privacy Litigation*,
   No. CIV.A. 12-07829, 2015 WL 248334, (D.N.J. Jan. 20, 2015)............................ 17

*In re Nickelodeon Consumer Privacy Litigation*,
   No. 15-1441, 2016 WL 3513782 (3d Cir. June 27, 2016)............................. 11, 12, 17

*Katz v. Pershing, LLC*,
   672 F.3d 64 (1st Cir. 2012).............................................................. 15

*Khan v. Children's National Health Systems*,
   No. 15-2125, 2016 WL 2946165 (D. Md. May 19, 2016)............................ 8, 15, 16

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..................................................................... 5, 6

*Martin v. DeSilva*,
   566 F.2d 360 (1st Cir. 1977)........................................................... 12, 13

*Moore Homes, Inc. v. Tarvezian*,
   1998 Mass. App. Div. 172, 1998 WL 544317 (1998) ..................................... 13

*Public Citizen v. Department of Justice*,
   491 U.S. 440 (1989)..................................................................... 12

*Rogers v. Capital One Bank (USA), N.A.*,
   No. 1:15-cv-4016-TWT, 2016 WL 3162592 (N.D. Ga. June 7, 2016) ..................... 9

*Smith v. Ohio State University*,
   No. 2:15-CV-3030, 2016 WL 3182675 (S.D. Ohio June 8, 2016)........................... 7

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)................................................................ *passim*

*Taber Partners, I v. Merit Builders, Inc.*,
   987 F.2d 57 (1st Cir. 1993).............................................................. 6

*U.S. v. AVX Corp.*,
   962 F.2d 108 (1st Cir. 1992) ............................................................................... 17, 18

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982) ................................................................................................. 5

*Walker v. Jackson*,
   952 F. Supp. 2d 343 (D. Mass. 2013) .................................................................. 13

*Wall v. Michigan Rental*,
   No. 15-13254, 2016 WL 3418539 (E.D. Mich. June 22, 2016) ........................... 8, 9

*Warth v. Seldin*,
   422 U.S. 490 (1975) ............................................................................................. 5, 6

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) .............................................................................................. 15

*Yershov v. Gannett Satellite Information Network, Inc.*,
   15-1719, 2016 WL 1719825 (1st Cir. Apr. 29, 2016) ............................................ 4

## Statutes & Rules

18 U.S. Code § 2710 (VPPA) ................................................................................... 10

Cable Communications Policy Act, 47 U.S.C. §551(e) ............................................. 8

Fed. R. Civ. P. 12(b)(1) ......................................................................................... 2, 17

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 17

Mass. Gen. Laws Ann. ch. 214, § 1B ...................................................................... 13

## Other Authorities

Google, *Turn location on or off for your device*, https:/support.google.com/nexus.answer/
   3467281 ?hl=en ...................................................................................................... 3

Restatement (Second) of Torts § 652B (1977) ......................................................... 14

Restatement (Second) of Torts § 652D (1977) .................................................... 13, 14

W. Prosser, *The Law of Torts*, sec. 117 (5th ed. 1984) ............................................ 13

## PRELIMINARY STATEMENT

This case should be dismissed because plaintiff lacks an injury-in-fact sufficient to confer Article III standing under the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ("*Spokeo*").  *Spokeo* is clear that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id.* at 1549.  Rather, "Article III standing requires a concrete injury even in the context of a statutory violation."  *Id.*  To be "concrete," an injury must be "real," and not "abstract"—*i.e.* "it must actually exist."  *Id.* at 1548.  In this case, Plaintiff Yershov's ("Plaintiff" or "Yershov") claim falls well short of that standard.  Yershov does not allege that he or the putative class suffered any qualifying injury from the alleged disclosures of device IDs and video titles to a service provider Gannett used to count video views.  Rather, he relies entirely on an alleged violation of the Video Privacy Protection Act (the "VPPA") itself as his injury-in-fact, claiming only that he and the putative class "have had their statutorily defined rights to privacy violated."  ECF # 1, Complaint ("Compl."), ¶ 62.  As several other district courts have recently concluded, however, allegations of statutory violations, without any attempt to connect such violations to a concrete injury, do not confer standing in the wake of *Spokeo*.

Yershov also cannot satisfy the injury-in-fact requirement based on the risk of real harm to him, which *Spokeo* acknowledged could also be enough to confer Article III standing.  As an initial matter, Yershov's Complaint is devoid of even the allegation that Gannett's conduct created any risk of real harm.  But even if he were to make such an assertion, in order to qualify as an injury-in-fact, a threatened injury must be certainly impending.  Allegations of possible future injury are not enough.  The existence of a "digital dossier" or "profile" on him in the

database of an analytics provider that Yershov complains about does not meet that standard.

Indeed, courts routinely conclude that information such as names, email addresses and social

security numbers in the hands of hackers does not even create a "certainly impending" risk

absent any actual misuse of such information.   Finally, Yershov lacks standing for the

independent reason that even if he alleged that he suffered a concrete injury (or some risk of

future injury), such an injury would necessarily depend on Adobe actually having a profile on

Mr. Yershov that Adobe could match to the video clips he watched.   But Yershov offers only

conclusory allegations that Adobe had such information, without any actual facts supporting his

conclusion.

Yershov does not identify any concrete injury that he suffered from Gannett's alleged

disclosures.   And any injury he can conjure up would require a lengthy chain of assumptions and

speculation about what a third-party might do.   This is simply not enough to establish standing,

particularly after *Spokeo*.   Accordingly, Yershov's claim should be dismissed under Fed. R. Civ.

P. 12(b)(1).

## **BACKGROUND**

### A.      **The App, the Alleged Misconduct, and Plaintiff's Claim**

Gannett is a media company that produces and distributes news content.  Compl. ¶ 1.  It

distributes this content through several different mediums, including the USA TODAY Android

application (the "App") that can be downloaded to Android smartphone mobile devices.   *Id.*

Once downloaded, the App provides users with articles and video clips organized into various

sections including News, Sports, and Life.   *Id.* at ¶ 12.

Yershov alleges that each time an Android user views a video clip on the App, the App

discloses certain allegedly personally identifiable information ("PII") to an unrelated third party

data analytics company, Adobe (who Gannett retained to count video views on the App). *Id.* at ¶¶ 2, 13. Specifically, Yershov alleges that the "combination of his device's unique Android ID and the records of videos that he viewed" constitute PII because it "allows Adobe to identify users such as [Plaintiff]." *Id.* at ¶ 57.[1] Yershov describes the Android ID as "a 64-bit number (as a hex string) that is randomly generated when the user first sets up the device and should remain constant for the lifetime of the user's device." *Id.* at ¶ 13 n.3. He does not allege that any Android user's name, social security number, or email address is disclosed to Adobe (or even that Gannett itself has such information). Nor does he contend that the viewed content or Android ID is disclosed to anyone other than Adobe.

Yershov describes Adobe as a data analytics company that "provides insights into the behaviors and demographics for the App's user base." *Id.* at ¶ 19. He alleges that "to gain a broad understanding of a given consumer's behavior across all of the devices and applications that an individual uses," analytics companies such as Adobe "have to find ways to 'link' their digital personas." *Id.* at ¶14. And that these companies' "primary solution has been to use unique identifiers to connect the dots." *Id.* Yershov does not identify any ***facts***, however, indicating that Adobe performed such "dot connecting" on him or any other user of the App. Indeed, Yershov does not even plausibly allege that Adobe ***had*** any additional information about him from other sources, such that it could perform this "dot connecting" had it wanted to. Instead, his claim is based on general marketing statements and internet articles.

---

[1] The Complaint makes several passing references to the Android phone's GPS coordinates also being disclosed to Adobe. *See e.g.*, Compl. ¶ 13. Plaintiff does not, however, allege any facts suggesting that Adobe can, or does, link GPS coordinates to a certain person. It is not surprising that Plaintiff cannot point to any such facts, particularly given that users of Android devices have the ability to turn off location services on their devices. *See, e.g., Turn location on or off for your device*, Google, https://support.google.com/nexus/answer/3467281?hl=en ("If you turn off location completely for your device, it mean [sic] that apps (both Google and non-Google apps) can't use your device location.") Notwithstanding this lack of any factual allegations, the alleged disclosure of GPS coordinates was at the core of the First Circuit's personally identifiable information holding.

Yershov identifies no actual injury that he or other potential class members suffered, economic or any other. Rather, he alleges only that he "and the Class have had their statutorily defined rights to privacy violated." *Id*. at ¶ 62. Yershov also does not claim that Gannett's alleged disclosures create any material risk of harm to **him** in the future. Notwithstanding this lack of any claimed actual injury or future harm, he seeks statutory damages of $2,500 per disclosure for him and the putative class. *Id*. at 18.

## B.     The Court's Initial Dismissal and the First Circuit's Decision on Appeal

Gannett initially moved to dismiss the Complaint on September 19, 2014. ECF # 14, Motion to Dismiss Class Action Complaint. This Court granted Gannett's Motion to Dismiss on May 15, 2015. ECF # 30, Memorandum and Order. The Court found that Yershov had not pled a violation of the VPPA because his mere download and use of the free USA TODAY App did not make him a Gannett "subscriber," and therefore he was not a "consumer" covered by the VPPA. *Id*. at 18-21. Because the Court found that Yershov was not a subscriber, it did not reach the question of whether he had adequately alleged an injury-in-fact so as to confer Article III standing. *Id*. at 21, n.18. On appeal, the First Circuit reversed this Court's dismissal, concluding that Yershov sufficiently alleged both that he was a "subscriber" within the meaning of the VPPA, and that what Gannett disclosed was personally identifiable information. *Yershov v. Gannett Satellite Info. Network, Inc.*, 15-1719, 2016 WL 1719825 (1st Cir. Apr. 29, 2016). Like this Court, the First Circuit did not address whether Yershov had Article III standing in its decision.

## C.     The Supreme Court's *Spokeo* Decision

On May 16, 2016, the Supreme Court decided *Spokeo*. Plaintiff Thomas Robins had alleged that Spokeo.com violated the Fair Credit Reporting Act ("FCRA"), including by

disseminating inaccurate information about his financial and educational status and other personal details.  The district court dismissed Robins' case for lack of standing.  *Spokeo* at 1544. The Ninth Circuit reversed, holding that where a statute does not require proof of actual damages, a plaintiff can sue based on the statutory violation alone.  *Id.* at 1544-45.  The Supreme Court vacated the Ninth Circuit's ruling, finding that a plaintiff does not "automatically [satisfy] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Spokeo* at 1549.  Rather, "Article III standing requires a concrete injury even in the context of a statutory violation," or at least a "material risk of harm." *Id.* at 1549, 1550.  In doing so, the Supreme Court noted that a "bare procedural violation" is not enough to confer standing.  *Id.* at 1550.  The Supreme Court's decision in *Spokeo* dictates that Yershov lacks standing in this case.

## ARGUMENT

The Constitution limits the judicial power of federal courts to actual cases and controversies.  *See Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Article III standing "is not merely a troublesome hurdle to be overcome if possible so as to reach the 'merits' of a lawsuit which a party desires to have adjudicated" but rather "every bit as important in its circumscription of the judicial power of the United States as in its granting of that power."  *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 476 (1982).  "If a [plaintiff] lacks Article III standing to bring a matter before the court, the court lacks subject matter jurisdiction to decide . . . the case."  *Dubois v. U.S. Dept. of Agric.*, 102 F.3d 1273, 1281 (1st Cir. 1996).

To satisfy the standing requirement, a plaintiff must sufficiently plead three elements: injury in fact, traceability, and redressability.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560–61 (1992).  An "injury in fact" is "'an invasion of a legally protected interest which is (a) concrete and particularized,' and (b) 'actual or imminent, not conjectural or hypothetical.'"  *See id*. at 560 (internal citations omitted).  To satisfy the injury-in-fact prong of Article III standing, a plaintiff must allege that as a result of the defendant's actions he has suffered "'a distinct and palpable injury.'"  *Conservation Law Found. of New England, Inc. v. Reilly*, 950 F.2d 38, 40 (1st Cir. 1991) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  When a party moves for dismissal pursuant to Rule 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence."  *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993).  Here, Yershov does not meet that burden.

## I.      Yershov Cannot Rely on the Alleged VPPA Violation as his Injury-in-fact

### A.      *Spokeo* Requires Concrete Injury Even in the Context of a Statutory Violation

Yershov cannot rely solely on the alleged violation of the VPPA as his injury-in-fact. *Spokeo* is clear that "Article III standing requires a concrete injury, even in the context of a statutory violation," and that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Spokeo* at 1545.  Instead, Article III standing depends on whether a concrete injury exists given the specific circumstances and consequences of each alleged violation.  Here, Yershov does not claim that he suffered any concrete injury as a result of Gannett's alleged disclosure to Adobe of the video clips he watched and device ID.

To establish Article III standing, an injury must be concrete and particularized. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).  In *Spokeo*, the Supreme Court emphasized that concreteness and particularization are distinct requirements. *Spokeo* at 1548. To be "concrete," an injury "must be '*de facto*'; that is, it must actually exist."  *Id.* at 1548 (internal

6

citation omitted).  The adjective "concrete" is "meant to convey the usual meaning of the term—'real,' and not 'abstract.'"  *Id.*  Where "an alleged injury is nothing more than a 'bare procedural violation,' there may be no cognizable harm to the plaintiff and thus no concreteness."  *Hochendoner v. Genzyme Corp.*, 15-1446, 2016 WL 2962148, at *5 (1st Cir. May 23, 2016) (quoting *Spokeo*).  Applying these principles, the Supreme Court in *Spokeo* rejected the notion that the mere disclosure of inaccurate information was itself sufficient to confer Article III standing to bring a FCRA claim.  Instead, the Supreme Court remanded the case to the Ninth Circuit to determine whether including alleged inaccurate information in plaintiff's credit report (which included misinformation about his education, family situation, and economic status) caused the plaintiff harm (or created a material risk of future harm) sufficient to meet the concreteness requirement. *Spokeo* at 1550.

Following *Spokeo*, other courts have similarly held that alleging a mere statutory violation with no actual harm does not confer Article III standing.  In *Smith v. Ohio State University*, No. 2:15-CV-3030, 2016 WL 3182675 (S.D. Ohio June 8, 2016), plaintiffs alleged that defendant Ohio State University ("OSU") violated the FCRA by including extraneous information on a credit report disclosure and authorization.  *Id.* at 1.  Plaintiffs argued that the FCRA "created legal rights for the Plaintiffs which were violated by OSU's conduct, and thus, that the violation is an injury sufficient to provide standing."  *Id.* at 6.  Citing *Spokeo*, the court rejected this argument, concluding that where "Plaintiffs admitted that they did not suffer a concrete consequential damage as a result of OSU's alleged breach of the FCRA" the court "cannot find that Plaintiffs have suffered an injury-in-fact."  *Id.* at 8.  The court reached this conclusion notwithstanding plaintiffs' allegation that they suffered harm because "their privacy was invaded and they were misled as to their rights under the FCRA."  *Id.*

7

These decisions are not just limited to the FCRA context.  In *Gubala v. Time Warner Cable Inc.*, No. 15-CV-1078, 2016 WL 3390415 (E.D. Wis. June 17, 2016), the District Court for the Eastern District of Wisconsin dismissed a claim brought under the Cable Communications Policy Act ("Cable Act") for lack of standing.  In that case, plaintiff alleged defendant violated the Cable Act's requirement that cable operators destroy personally identifiable information once no longer necessary for the purpose for which it was collected.  *See id.* at *1; Cable Act, 47 U.S.C. §551(e).  Citing heavily to *Spokeo*, the court dismissed the case for lack of standing.  The court reasoned that there were "no allegations in the thirteen pages of the second amended complaint showing that the plaintiff has suffered a *concrete* injury as a result of the defendant's retaining his personally identifiable information."  *Gubala*, 2016 WL 3390415 at *4 (emphasis in original).  And that "[a] statement that consumers highly value the privacy of their personally identifiable information . . . does not demonstrate that the plaintiff has suffered a concrete injury."  *Id.*  The court noted that even if plaintiff had alleged that the defendant disclosed his information to a third party, "he does not allege that the disclosure caused him any harm.  He does not allege that he has been contacted by marketers who obtained his information from the defendant, or that he has been the victim of fraud or identity theft."  *Id.*

In *Khan v. Children's National Health Systems*, No. 15-2125, 2016 WL 2946165 (D. Md. May 19, 2016), plaintiff who was the victim of a data breach argued that the violations of certain state statutes established standing.  *Id.* at *7.  The court, citing *Spokeo*, rejected this argument on the ground that plaintiff "failed to connect the alleged statutory . . . violations to a concrete harm."  *Id.*  In doing so, the court noted that plaintiff conflated the question whether she had a cause of action under the statute "with the question whether she has Article III standing to pursue that cause of action in federal court."  *Id.*  Similarly, in *Wall v. Michigan Rental*, No. 15-13254,

2016 WL 3418539 (E.D. Mich. June 22, 2016), the Eastern District of Michigan found that plaintiffs lacked standing to pursue a claim under a Michigan statute regulating landlords' use of security deposits in residential tenancies. *Id.* at *3. Citing *Spokeo*, the court reasoned that where plaintiffs "do not assert a risk that exposed them to 'real' financial harm," but instead "divine[d] harm from the possibility of a violation of the statute" it was "not the sort of 'concrete' injury for which Plaintiffs have standing to seek redress in federal court." *Id.*

Conversely, where district courts have found that a plaintiff has adequately alleged injury-in-fact sufficient to confer standing post-*Spokeo*, it has been because he or she had allegedly suffered some concrete harm from the statutory violation. *See, e.g.*, *Booth v. Appstack, Inc.*, No. 13-1533 JLR, 2016 WL 3030256, at *8 (W.D. Wash. May 24, 2016) (finding alleged time wasted in answering or otherwise addressing a "massive" number of robocalls to be sufficient injury to pursue claims under Telephone Consumer Protection Act ("TCPA") and similar state statutes); *In re Barclays Bank PLC Sec. Litig.*, No. 09 Civ. 1989, 2016 WL 3235290, at *6 (S.D.N.Y. June 9, 2016) (finding an alleged diminution in value of shares to be sufficient injury in fact); *Rogers v. Capital One Bank (USA), N.A.*, No. 1:15-cv-4016-TWT, 2016 WL 3162592, at *2 (N.D. Ga. June 7, 2016) (finding concrete injury under the TCPA where junk faxes made the line unavailable for legitimate use); *Boelter v. Hearst Commc'ns, Inc.*, No. 15 Civ. 3934, 2016 WL 3369541, at *3 (S.D.N.Y. June 17, 2016) (finding standing where complaint claimed that defendants' conduct "deprived [p]laintiffs of their right to keep their information private, subjected them to unwanted solicitations and the risk of being victimized by 'scammers,' and unjustly retained the economic benefit the value of that information conferred.")

Applied to the case at hand, the reasoning of *Spokeo*, its vacating of the Ninth Circuit's decision, and the cases following it support the conclusion that Yershov lacks standing. The

Complaint alleges only that "Plaintiff and the Class have had their statutorily defined rights to privacy violated."  Compl. ¶ 62.  But the Complaint fails to connect that alleged statutory violation with any concrete harm Yershov suffered from USA TODAY's alleged statutory violation.  And while this failure is not surprising given the conduct Yershov complains about— USA TODAY's disclosure (without knowledge by USA TODAY of the person who was viewing the videos) of a device identifier to a service provider used by USA TODAY to count video views on the USA TODAY App—it is not enough to satisfy the injury-in-fact requirement.  Article III "requires a concrete injury even in the context of a statutory violation."  *Spokeo* at 1549.

That Congress enacted the VPPA does not alter the requirement that Yershov suffer some actual injury to bring suit.  *Spokeo* is clear that while Congress can identify "concrete, de facto injuries" not previously recognized, a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation."  *Id*.  The Supreme Court emphasized, for example, that a credit report that violates FCRA's requirements "may result in no harm" because it could still be "entirely accurate."  *Id*. at 1550.  The alleged disclosures at issue here are similarly "procedural" in nature.  The VPPA allows video tape service providers to disclose information to vendors assisting in debt collection activities, order fulfillment, request processing, and the transfer of ownership.  *See* 18 U.S. Code §§ 2710(b)(2)(E), (a)(2).  It just did not specifically authorize disclosure to vendors who perform analytics (or those who host servers or store backup tapes for that matter).  If anything, the harm Congress elevated with the VPPA was **public** disclosure of video viewing information (such as was the case with Judge Bork), not vendor disclosure— especially where such vendors are themselves prohibited from making further disclosures (either

by the VPPA itself, or by contract).  Thus, without any allegation that the disclosure to such a vendor created an identifiable harm to Yershov, the Complaint fails to allege a "concrete" injury.

Even if the disclosures at issue here are considered "substantive" as opposed to "procedural," *Spokeo* does not limit the requirement of a concrete injury to only procedural violations.  To the contrary, the Court noted that even where a violation of FCRA led to the disclosure of false information, "not all inaccuracies cause harm or present any material risk of harm.  An example that comes readily to mind is an incorrect zip code.  It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Spokeo* at 1550.  The Supreme Court reached this conclusion even though it recognized that through FCRA, Congress had identified and elevated an intangible harm—the risk of "the dissemination of false information." *Id.*  In *Gubala*, the court likewise found no standing even though Congress, through the Cable Act, "identified and elevated an intangible harm—the risk to subscribers' privacy created by the fact that cable providers have an 'enormous capacity to collect and store personally identifiable information about each cable subscriber.'"  2016 WL 3390415 at *4.  The same goes here.  Yershov must suffer some concrete injury to bring suit, regardless of Congress's aims in enacting the VPPA.[2]  The disclosure of information to a service provider for the purpose of counting video views does not, by itself, cause such injury.

---

[2] In *In re Nickelodeon Consumer Privacy Litigation*, No. 15-1441, 2016 WL 3513782 (3d Cir. June 27, 2016), the Third Circuit found that plaintiffs had standing to bring their VPPA claims notwithstanding *Spokeo*. *See id.* at *7-8.  In that case, however, the parties never fully briefed *Spokeo's* meaning and impact. Rather, each party submitted a letter of less than two pages. *See* No. 15-1441 (3d Cir. 2016), Doc # 003112302629 (May 20, 2016), and Doc # 003112315524 (June 3, 2016).  The court thus interpreted *Spokeo* differently than other courts, including by disregarding *Spokeo's* statement that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *See Spokeo* at 1549. For example, the *Nickelodeon* court cited *Spokeo*'s statement that intangible harms that give rise to standing include harms that "may be difficult to prove or measure." *In re Nickelodeon* at *7 (quoting *Spokeo* at 1549-50).  But an "intangible harm" is different than "no harm," and the cases *Spokeo* cited as support for its statement did not hold that the violation of a statutory right, with no harm, was an injury-in-fact.  In *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24-5 (1998), the Supreme Court held that the denial of

**B.      The Alleged Disclosures Here Would Not Have Traditionally Provided the Basis for a Lawsuit**

Yershov cannot salvage his claim by arguing that the disclosures at issue in this case resemble those that would have traditionally provided the basis for a lawsuit.  *Spokeo* instructs that in evaluating whether concrete injury exists, a court may "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, at 1549.  The disclosure of news clips viewed on a smartphone along with the device ID (and not even the name of the viewer, which Gannett did not have) to a service provider retained to count video views bears no such close relationship.

Yershov's Complaint refers to his "privacy rights," but the disclosure of video titles he watched on the USA TODAY App and his device ID does not have a "close relationship" to any traditional privacy right.  The Commonwealth of Massachusetts, where Yershov resides, has not clearly recognized a common law privacy right.  *See, e.g., Martin v. DeSilva*, 566 F.2d 360, 361 (1st Cir. 1977) ("The plaintiff's assertion that, regardless of the statutory issue, the common law

---

information necessary to cast an informed vote was a deprivation "directly related to voting, the most basic political rights," and therefore "sufficiently concrete and specific."  Similarly, in *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989), the Court found standing where interest groups "sought and were denied specific agency records" needed to scrutinize the "workings" of government that the law required the government to disclose.  The *Nickelodeon* court also reasoned that "[i]nsofar as *Spokeo* directs us to consider whether an alleged injury-in-fact 'has traditionally been regarded as providing a basis for a lawsuit,' previous Third Circuit precedent had "noted that Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private."  *In re Nickelodeon* at *7 (quoting *Spokeo* at 1549).  But what *Spokeo* said was that because the case-in-controversy requirement was "grounded in historical practice," courts should consider whether an alleged harm has a close relationship to a harm that "has traditionally been regarded as providing a basis for a lawsuit ***in English or American courts***." *Spokeo* at 1549 (emphasis added).  That is a different question than whether there are other statutes proscribing similar conduct and, as noted below, no such close relationship exists here.  Although it found standing, the *Nickelodeon* court ultimately affirmed the District Court's dismissal of plaintiffs' VPPA claims, holding that the VPPA's prohibition on the disclosure of personally identifiable information "applies only to the kind of information that would readily permit an ordinary person to identify a specific individual's video watching behavior," and that disclosures "involving digital identifiers like IP addresses, fall outside the [VPPA's] protections."  *In re Nickelodeon* at *1.

of Massachusetts would permit him to recover here for the alleged invasion of his privacy, also is meritless. Before the enactment of the Massachusetts Privacy Statute, Mass. Gen. Laws ch. 214, s 1B . . ., the Supreme Judicial Court had never authorized the recovery of damages for an invasion of privacy tort.").  *See also Moore Homes, Inc. v. Tarvezian*, 1998 Mass. App. Div. 172, 1998 WL 544317, at *4 (1998) ("[Plaintiff] has wisely avoided any argument that he had a nonstatutory or common law right of recovery [based on privacy torts] which could be pursued in the District Court.").[3]

Nor does the disclosure of video titles and device ID bear a close relationship to privacy torts that have developed in federal court.  There are four different privacy torts that have come to be recognized by courts: 1) appropriation; 2) unreasonable intrusion; 3) public disclosure of private facts; and 4) false light in the public eye.  *Dopp v. Fairfax Consultants, Ltd.*, 771 F. Supp. 494, 496 (D.P.R. 1990) (citing W. Prosser, *The Law of Torts*, sec. 117 (5th ed. 1984)).  Of these, only the second and third are even potentially applicable, but Yershov has not suffered a harm that bears a close relationship to the harms giving rise to even those causes of action.

Public disclosure of private facts, for example, entails "giv[ing] publicity to a matter concerning the private life of another" in a way that "would be highly offensive to a reasonable person."  *See* Restatement (Second) of Torts § 652D (1977).  But USA TODAY's alleged disclosures are not to the public, but to a single service provider contractually retained to count video views.  *See id*. at Comment a. (noting that "Publicity" means "that the matter is made

---

[3] Massachusetts created a *statutory* right of privacy in 1974.  *See* Mass. Gen. Laws Ann. ch. 214, § 1B ("A person shall have a right against unreasonable, substantial or serious interference with his privacy"). The existence of such a statutory right, however, is not relevant to the question of whether an alleged intangible harm from a VPPA violation "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American Courts."  *Spokeo*, at 1549.  Even if that were not the case, in order for an intrusion to be actionable under the Massachusetts privacy statute, the intrusion must be both unreasonable and substantial or serious. *Walker v. Jackson*, 952 F. Supp. 2d 343, 353 (D. Mass. 2013).  The further disclosure of news video titles and device IDs to an analytics provider that Yershov complains about is neither unreasonable nor substantial or serious.

public, by communicating I t to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge"). Nor would the disclosure of the video clips Yershov watched on USA TODAY's app and device IDs be "highly offensive" to a reasonable person—just like the disclosure of a television serial number or license plate would not be "highly offensive." The disclosures at issue here are also not the "highly offensive" prying required for an intrusion upon seclusion claim—such as a "physical intrusion" into a plaintiff's home or hotel room; "looking into his upstairs windows with binoculars;" or tapping his phones. *See* Restatement (Second) of Torts § 652B (1977), Comment *b*. Gannett's disclosure of video titles and device IDs to a contractual service provider as part of Gannett's business operations does not resemble any of these torts which address far more serious harms than what is alleged here.

## II.    The Complaint Does Not Allege Any Material Risk of Harm to Plaintiff

Yershov also does not have Article III standing based on any ***risk*** of harm from Gannett's alleged disclosures. In *Spokeo*, the Supreme Court stated that a "risk of real harm" or "material risk of harm" could potential*y* satisfy Article III's concreteness requirement. *See Spokeo* at 1549, 1550. During the June 16, 2016 Status Conference, Yershov suggested that such risk of harm gives him standing. This is wrong.

As an initial matter, the Complaint does not even attempt to allege that Yershov is at any risk of harm from Gannett's conduct. There is no assertion (implausible as it may be) that Yershov is at risk of some economic harm, or even an emotional harm, from Gannett's alleged disclosure of device ID and news clips he watched to Adobe. The closest the Complaint comes (which is not very close) is reciting various statements from government officials regarding the need to address the proliferation of personal information in the digital age. *See, e.g.,* Compl. ¶ 32. Such generic statements, however, are not enough. *See, e.g.*, *Gubala*, 2016 WL 3390415 at

*4 (holding that "statement[s] that consumers highly value the privacy of their personally identifiable information . . . do[] not demonstrate that the plaintiff has suffered a concrete injury").

Even accepting as true Yershov's allegation that Adobe possesses a "profile" or "digital dossier" on him (which the Court should not do), the Complaint would not allege risk of harm sufficient to constitute injury-in-fact.  Where a plaintiff alleges an injury based on future harm, "[the] threatened injury must be *certainly impending*." *Clapper*, 133 S. Ct. at 1147 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).  Mere "'[a]llegations of possible future injury' are not sufficient." *Id*.  Where an alleged injury requires a lengthy chain of assumptions, including "guesswork as to how independent decisionmakers will exercise their judgment," the injury is too speculative to be "certainly impending." *Id.* at 1150.

Courts both before and after *Spokeo* have concluded that the actual or potential access of personal information such as names and social security numbers by computer hackers does not create a risk sufficient to confer standing absent any misuse of such information.  *See, e.g., Katz v. Pershing, LLC*, 672 F.3d 64, 80 (1st Cir. 2012) (no standing where plaintiff "allege[d] only that there is an increased risk that someone might access her data and that this unauthorized access (if it occurs) will increase the risk of identity theft and other inauspicious consequences"); *Chambliss v. Carefirst, Inc.*, No. RDB-15-2288, 2016 WL 3055299, at *3 (D. Md. May 27, 2016) (no standing where plaintiffs "have not alleged how a hacker would use the particular information stolen to harm the Plaintiffs.  Their theory of harm relies solely on the actions of an unknown independent third party");[4] *Khan*, 2016 WL 2946165, at *5 (no standing where

---

[4] The *Chambliss* court also rejected plaintiffs' theory that "their personal information has an intrinsic value that was diminished as a result of the CareFirst data breach." *Id.* at *6.  Specifically, the court noted that it "need not decide whether such personal information has a monetary value, as Plaintiffs have not

plaintiff alleges "no suspicious activity: no unauthorized bank accounts or credit cards, no medical fraud or identity theft, and no targeted solicitations for health care products or services").[5]  If those situations do not create a "certainly impending" risk, the mere (alleged) existence of an enhanced "profile" or "digital dossier" in the hands of an analytics provider would not create such a risk.  *See Clapper*, 133 S. Ct. at 1147.

## III.   Yershov Has Not Plausibly Alleged that Adobe Has a Profile on Him

Yershov lacks standing for the independent reason that he does not allege facts supporting the notion that Adobe had a "profile" on him such that it could use that profile to identify him as having watched specific videos on the USA TODAY App.  As noted above, Yershov does not allege that he suffered a concrete, injury, or some risk of injury from Gannett's disclosures.  But even if he did, based on his Complaint, any such injury (or risk of future injury) would necessarily depend on Adobe having a detailed profile on Mr. Yershov.  *See, e.g.*, Compl. ¶ 42 ("Adobe was able to identify Yershov and attribute his video viewing records ***to an individualized profile of Plaintiff Yershov in its databases***.") (emphasis added); *id.* at ¶ 29 ("Adobe uses data obtained from the USA Today APP, among other sources, to personally identify users and associate their video viewing selections with ***a personalized profile in its databases***.") (emphasis added).  Nowhere in the Complaint, however, does Yershov plead ***facts*** supporting the conclusory allegation that Adobe had a profile on him.  To the contrary, the notion that Adobe had a profile on Mr. Yershov is based on pure speculation of the kind not entitled to any weight.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

alleged that they have attempted to sell their personal information or that, if they have, the data breach forced them to accept a decreased price for that information."  *Id.*

[5] The *Khan* court likewise rejected plaintiff's argument that "the data breach has caused a loss of privacy that constitutes an injury in fact," concluding that plaintiff "has not identified any potential damages arising from such a loss and thus fails to allege a concrete and particularized injury."  *Id.* at *6.

Courts in other VPPA cases have declined to rely on similarly conclusory allegations about the capabilities of third parties that received allegedly improperly disclosed information. In *In re Nickelodeon Consumer Privacy Litigation*, MDL No. 2443, CIV.A. 12-07829, 2014 WL 3012873 (D.N.J. July 2, 2014), the court refused to consider plaintiffs' allegation that Viacom and Google "were able to identify specific individuals" by connecting "online activity and information" with "offline activity and information," because it was "entirely conclusory" and supported by "no facts . . . which indicate when or how either Defendant linked the online information it collected with extra-digital information about the Plaintiffs." *Id.* at *2 n.3.[6] Likewise, in *Eichenberger v. ESPN, Inc.*, C14-463, 2:14-cv-463 (W.D. Wash. Nov. 24, 2014), the court noted that "[e]ven if Adobe does 'possess a wealth of information' about individual consumers, it is speculative to state that it can, and does, identify specific persons as having watched or requested specific video materials from the WatchESPN application." *See Eichenberger*, ECF # 38, Order, at 2.  The complaint dismissed in *Eichenberger* is nearly identical substantively to the Complaint in this case. *Id.* at ECF # 28.

Although the statements in *Nickelodeon* and *Eichenberger* were made in the context of Rule 12(b)(6) analyses, "bald assertions, unsupportable conclusions, [and] periphrastic circumlocutions" are similarly insufficient to survive a Rule 12(b)(1) challenge. *Figueroa v. Mendez*, No. CIV. 07-1289 (RLA), 2008 WL 898095, at *1 (D.P.R. Mar. 28, 2008).  The notion that Adobe had a "profile" on Yershov is a key component of Gannett's alleged VPPA violation, and therefore Yershov's only potential injury.  But the "facts necessary to support standing must clearly appear in the record and 'cannot be inferred argumentatively from averments in the

---

[6] The district court dismissed plaintiffs' VPPA claim without prejudice.  *Id.* at *13.  Plaintiffs subsequently filed a second amended complaint alleging VPPA violations, which the district court also dismissed.  *See In re Nickelodeon Consumer Privacy Litig.*, No. CIV.A. 12-07829, 2015 WL 248334, (D.N.J. Jan. 20, 2015).  It was this dismissal that was recently affirmed by the Third Circuit in *In re Nickelodeon Consumer Privacy Litigation*, No. 15-1441, 2016 WL 3513782 (3d Cir. June 27, 2016).

pleadings.'" *U.S. v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).  A plaintiff cannot meet his burden "by purely conclusory allegations or by a Micawberish reading of a party's generalized averments." *Id.  See also Conservation Law Found. v. Pub. Serv. Co. of N.H.*, No. 11-CV-353-JL, 2012 WL 4477669, at *3 (D.N.H. Sept. 27, 2012) ("Threadbare recitals of the elements of a cause of action (or, as is the case here, the elements of standing) similarly do not suffice.").[7]

Conclusory allegations are all that Yershov offers. Nowhere does he identify facts supporting the inference that Adobe had a profile on him.  He does not allege that he himself previously provided information to Adobe or used Adobe products or services such that he was in Adobe's "databases."  Nor does he identify any other source from which Adobe obtained his information.  Instead, Yershov points to various general statements that Adobe receives data from many sources (which is not surprising from a data analytics company) and then concludes that Abode must have an individualized profile of him (and by implication every other person) in its databases.  Such general statements, however, do not nudge Yershov's assertion that Adobe had a profile on him "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## CONCLUSION

For the foregoing reasons, this Court should grant Gannett's Motion to Dismiss the Complaint with prejudice.

Dated:  June 30, 2016                                       By: /s/ Jeffrey Landis
                                                            Marc Zwillinger (admitted *pro hac vice*)
                                                            Jeffrey Landis (admitted *pro hac vice*)

---

[7] The *AVX* court referred to its rejection of "conclusory allegations" and "generalized averments" in favor of factual allegations regarding each material element needed to sustain standing as a "heightened" standard.  *See AVX*, 962 F.2d at 115. As the court in *Conservation Law Foundation* explained, however, that standard "might well have been characterized as 'heightened'" when *AVX* was decided in 1992, but "[i]n today's post-*Twombly* pleading paradigm, though, that standard is the rule, not the exception." *See Conservation Law Found.*, 2012 WL 4477669, at *3

ZWILLGEN PLLC
1900 M. St. N.W., Ste. 250
Washington, DC 20036
Tel: 202.296-3585
Fax: 202-706-5298

and

Heather B. Repicky (BBO # 663347)
NUTTER MCCLENNEN & FISH
Seaport West
155 Seaport Boulevard
Boston, Massachusetts 02210
Tel: 617.439.2684
Fax:  617.310.9684

*Counsel for Defendant*